NOT FOR PUBLICATION                                           [Docket No. 28]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
KATHRYN TORRES AND TASHIVA        :
TORRES                            :
                                  :
              Plaintiffs,         :   Civil Action No. 04-2233 (RMB)
                                  :
         v.                       :   OPINION
                                  :
CITY OF ATLANTIC CITY, et al.,    :
                                  :
              Defendants.         :
```

APPEARANCES:

Teri Lodge, Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, PC
66 Euclid Street
Woodbury, NJ 08096
    Attorney for Plaintiffs

Karen M. Williams, Esq.
Donna Lee Vitale, Esq.
JASINSKI & WILLIAMS, PC
The Old Guarantee Trust Building
1125 Atlantic Avenue
Suite 518
Atlantic City, NJ 08401
    Attorneys for Defendant, City of Atlantic City

A. Michael Barker
BARKER & SCOTT
210 New Road
Linwood Greene, Suite 12
Linwood, NJ 08221
    Attorney for Defendants, Sgt. Charles Love, Det. Mary Grace
    Ingram, Det. Christopher Barber, and Det. Harold Mason, Jr.

**BUMB**, United States District Judge:

**Introduction:**

This matter comes before the Court upon Defendant's, the City of Atlantic City (which includes the Atlantic City Police Department or "ACPD"), hereinafter "the City", motion for summary judgment. The facts underlying this motion are set out briefly below.

**Factual Background:**

The following facts are drawn from the parties' Rule 56.1 statements and are undisputed unless otherwise noted. Plaintiffs in this matter are Kathryn Torres and her daughter Tashiva Torres. Kathryn Torres was the manager of an apartment complex located in Atlantic City, NJ; the complex had a history of criminal activity. The parties agree that Kathryn Torres had previously spoken with Deputy Chief Jubilee of the ACPD but the subject of the conversation is disputed.

On May 3, 2002, the Plaintiffs were at the apartment complex working in the office and left the area at approximately 10:00PM. Plaintiffs spoke to tenant Sharon Junne in the parking lot of the complex. The parties dispute whether Junne stated that there had been a theft at her premises.

Plaintiffs then exited the parking lot in a large green Dodge Durango Sport Utility Vehicle. Plaintiffs saw a vehicle parked near the complex. (Defendant argues that it was parked on

a public street).  There were four Caucasian adults in the vehicle - Sgt. Charles Love, Det. Mary Grace Ingram, Det. Christopher Barber, and Det. Harold Mason, Jr., (the "Officers") who are not part of the instant motion.  The vehicle was unmarked and the Officers were in street clothes.  Plaintiff testified that she was concerned because she did not recognize the persons in the vehicle.  (While Plaintiffs contend that the vehicle was a silver/grey Chevy Lumina - Defendant asserts that the vehicle was dark blue).  Kathryn Torres pulled her vehicle alongside the Lumina and asked the officers if they needed help.  Plaintiff alleges that Love's tone was "brash" when he answered "No".

The following events are heavily disputed.  For ease, Plaintiffs' allegations will be listed and compared with Defendant's version of the facts.

<u>Plaintiffs' Allegations:</u>

Plaintiffs allege that the officers continued to address them in a nasty tone and that Sgt. Love asked Plaintiff Kathryn Torres who she was.  Plaintiff responded that she was the manager of the property.  Plaintiff alleges that none of the occupants were in uniform and that the vehicle had no lights or insignia and appeared to be an ordinary vehicle.

Love indicated that he was a police officer but Kathryn Torres did not believe him and asked for identification.  All four officers then exited the vehicle and stood around

3

Plaintiff's vehicle. Kathryn Torres maintains that she was never shown police identification. Defendant Barber than said to Plaintiff, in an angry tone - "We can park here - it's a public street." At this point, Love began shouting at Kathryn Torres and "everything started going crazy."

<u>Defendant's Response</u>:

The Defendant asserts that the vehicle did have police lights - which were hidden in the grill and not visible unless activated. Love informed Plaintiffs that he was a police officer and Kathryn Torres asked for ID. Love testified that he pulled out his ACPD badge to show to Plaintiffs.

<u>Plaintiffs' Allegations</u>:

Plaintiffs allege that Defendant Ingram then opened the passenger door and grabbed Tashiva Torres, trying to pull her from the vehicle. Kathryn Torres reached over and shut and locked the door and rolled up her window. Ingram then began to tap on the window repetitively with a hard object. Love was yelling at Kathryn Torres who did not believe the Defendants were, in fact, police officers. Kathryn Torres believed she and her daughter were in danger and drove away. Plaintiffs dispute that they were told to put on their seatbelts, asked to provide identification or that Kathryn Torres was told she was under arrest.

4

Defendant's Response:

While Plaintiff testified that Ingram opened the passenger door and tried to pull Tashiva out of the vehicle, Ingram denied actually opening the door.  Ingram knocked on window.  Kathryn Torres was asked for identification and asked her to put on her seatbelt.  Kathryn Torres did not indicate that she did not believe they were police officers and that she admitted at deposition that she was told to put on her seatbelt.  Defendant asserts that Kathryn Torres struck Defendant Ingram as she drove away.

Plaintiffs' Allegations:

Plaintiff Kathryn Torres alleges that, once she drove away, she stopped at a stop sign and then called 911 to talk to Deputy Chief Jubilee.  A patrol vehicle came towards Plaintiffs' vehicle.  When Barber ran up to Plaintiffs' vehicle, Kathryn Torres proceeded through a green light to stop near a patrol vehicle.  Kathryn Torres stated that she never saw the Lumina following her and that Love approached the vehicle screaming profanities.  Kathryn Torres was removed from the vehicle and handcuffed without incident.  The Officers attempted to remove Tashiva Torres from the vehicle but she was belted in.  Once she was removed from the vehicle, Ingram slammed Tashiva Torres against the vehicle and hit her head on the police cruiser.  Plaintiffs were separately transported to the Atlantic City

5

Police Station and charged with the following offenses:

Kathryn Torres:
- Aggravated Assault by Auto
- Eluding
- Resisting Arrest
- Driving with a suspended license
- Unlicensed driver
- Reckless driving
- Disregarding a stop sign
- Disregarding a red light
- Failure to wear a seatbelt
- Disorderly conduct

Tashiva Torres:
- Obstructing Administration of Law
- Resisting Arrest
- Failure to wear a seatbelt

Defendant's Response:

Defendant denies that Plaintiffs called 911 right away and claim that Kathryn Torres ran a stop sign and red light. The Officers activated the lights and siren. Plaintiffs were instructed to pull over and were ordered out of the vehicle. Kathryn Torres refused to get out of the vehicle. Defendant denies that Tashiva Torres was slammed against the vehicle.

Plaintiffs' Allegations re: Prosecution:

During the criminal prosecution, requests were made to inspect the police vehicle and those requests were denied. A stipulation was entered into stating that there was no police ID or emergency lighting on the police vehicle.

Trial commenced on Feb. 9, 2004, and ended in a mistrial. A new trial began on Feb. 17, 2004. The court ordered that the

defense be allowed to inspect the undercover vehicle.  The vehicle produced was not the silver/gray Lumina Plaintiffs allege was the car on the date of the incident, but was dark blue - Plaintiffs contend that the vehicles were switched.

A second mistrial was declared due to discovery violations.  On April 21, 2004, the indictments were dismissed with prejudice.  Defendant Love maintains that it is the ACPD practice that no record be kept of what vehicle is assigned to an officer at a specific time.  There is a policy requiring all officers involved in a pursuit to file an incident report.

Defendant's Response:

Defendant contends that the vehicle presented was the vehicle used on the date of the incident.  There is a log of all vehicles assigned to the ACPD.  The ACPD does not own a silver/grey lumina and Sgt. Love and driven the same vehicle for years.  While only one report was issued, the vice unit worked as a team and the Sergeant would review the reports and supplemental reports are permitted.  The ACPD policy regarding serious incident reports was amended in 2004 to require each officer to issue a separate report.

**Standard for Summary Judgment:**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to

a judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Hersh v. Allen Products Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  "In making this determination, a court must make all reasonable inferences in favor of the non-movant." <u>Osvehicle Mayer Corp. v. Mincing Trading Corp.</u>, 744 F. Supp. 79, 81 (D.N.J. 1990) (citing <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983) <u>cert. dismissed</u>, 465 U.S. 1091 (1984)).  "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

**City's Motion for Summary Judgment:**

As a preliminary matter, this Court notes that the parties are in agreement that punitive damages cannot be assessed against the City.  <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981).  The City argues that it is entitled to summary judgment because Plaintiffs have failed to identify a custom or policy that caused a deprivation of Plaintiffs' constitutional rights.[1]  Plaintiffs allege that their constitutional rights were violated when they were subjected to false arrest and malicious

---

[1] In their moving papers, the City initially discusses a <u>Brady</u> violation. Plaintiffs, however, do not appear to be basing their claim on <u>Brady</u>, and therefore, the Court will not discuss it.

prosecution and that such violations were made possible due to the City's "customs and policies of allowing only one officer to write a police report and failing to keep records regarding the possession and use of undercover vehicles." (Pls.' Br. at 27). In other words, Plaintiffs assert that the City's policies caused and enabled Plaintiffs' rights to be violated by the individual Defendants.

Plaintiffs, analogizing to failure to train claims, argue that they need not establish that the policies themselves violated their constitutional rights - but rather, they must only establish that the policies are causally linked to their injuries. (Pls.' Br. at 28). Accordingly, Plaintiffs allege that the custom or policy of having only one officer write a report and not requiring a vehicle log was causally connected to Plaintiffs' injuries and demonstrated a deliberate indifference on the part of the City to the right of citizens. Defendant asserts that Plaintiffs have not adequately demonstrated that a violation of Plaintiffs' constitutional rights was caused by either a policy or custom of the City and that such causation is required to establish a § 1983 violation. Causation is the central issue in dispute.

When bringing an action under 42 U.S.C. § 1983, a Plaintiff must satisfy a two-prong test by showing that: 1) the conduct complained of was committed by a person acting under color of

state law, and 2) the conduct deprived that person of rights guaranteed by the United States Constitution. West v. Atkins, 487 U.S. 42, 48 (1988). "There are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom." Watson v. Abington Twp., 2007 U.S. App. LEXIS 3485 at *27-29 (3d Cir. Feb. 16, 2007). Moreover,

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of the County Comm'Rs v. Brown, 520 U.S. 397, 404 (1997).

The City argues that Plaintiffs do not demonstrate that the municipal policy makers acted with deliberate indifference or maintained a policy or custom that caused the individual Defendants to violate Plaintiffs' constitutional rights such that the custom/policy was the moving force behind the violation. (City's Br. at 10-11).  This Court agrees.

Plaintiffs must show that the custom or policy proximately "inflicts the injury." Losch v. Borough of Parkesburg, 736 F.2d 903 (3d Cir. 1984); here, Plaintiffs have not alleged that the custom/policy inflicted the injury - but rather created a situation that allowed the individual Defendants to act in such a manner which resulted in a constitutional violation.  "Where a

plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of the County Comm'Rs v. Brown, 520 U.S. 397, 405 (1997).  The record before this Court, however, is devoid of evidence supporting Plaintiffs' claim that a lack of reports and vehicle log are the proximate cause of the injuries alleged; Plaintiffs have not met the "rigorous standards of culpability and causation." Id.  For example, Plaintiffs argue that had all the officers been required to write individual reports "they would not have been able to fabricate evidence." Plaintiffs, however, present no evidence other than their speculation and conjecture that things would have been different if all officers had to write reports.

Moreover, arguments presented by Plaintiffs in support of their position are framed in speculative terms: "[i]t is unknown, and it will never be known what information would have been gleaned if each officer had documented his observations on the date in question." (Pls.' Br. at 29).  This Court reads this argument to say, it is unclear whether or not the alleged injuries still would have occurred even if the City required every officer to write a report.  Clearly, such speculation and conjecture cannot be the foundation for municipal liability under

11

§ 1983.  See Vasquez v. City of Jersey City, 2006 U.S. Dist. LEXIS 72135 at * 25 (D.N.J. 2006) (finding that grounds for municipal liability were not established where Plaintiffs provided no specific evidence of causation but rather based their arguments on speculative questioning).

Additionally, there is no evidence on the record of past instances where lack of police reports has led to the fabrication of evidence, thus, it cannot be argued that the City was aware of such problems and failed to take precautions.  See City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985) (finding that one incident is usually not sufficient where policy itself is not unconstitutional); Vasquez, 2006 U.S. Dist. LEXIS 72135 at * 25 (granting summary judgment where conclusory and questioning assertions were coupled only with evidence from the one specific incident alleged and no others).

Plaintiffs have not created a genuine issue of material fact as to whether the City has caused or acquiesced in the falsification of reports and fabrication of evidence - which, in the instant case is the constitutional violation at issue. Again, the policy/custom alleged is one that allows only one police report to be filed and does not require a vehicle log - the casual link to the alleged violation by the individual officers is too attenuated and the City is entitled to survive summary judgment.  This result is "consistent with the Court's

12

narrow construction of municipal liability under 42 U.S.C. § 1983 since Monell, limiting municipal liability to only those constitutional torts actually caused by the municipality." Beck, 89 F.3d at 972; see Bd. of the County Comm'Rs v. Brown, 520 U.S. 397, 400 (1997)("in enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights.").

**Conclusion**:

    For the aforementioned reasons, Plaintiff has failed to demonstrate that an issue of material fact exists as to the City's liability in the above-captioned matter.  Thus, the City is entitled to summary judgment.

    An accompanying Order will issue this date.


Dated: April 24, 2007                s/Renée Marie Bumb
                                     RENÉE MARIE BUMB
                                     United States District Judge